UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SUSAN KINDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-00856-TWP-MJD |
| | ) |
| MARION COUNTY PROSECUTOR'S OFFICE, | ) |
| CELITA SCOTT, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PENDING MOTIONS**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants' Marion County Prosecutor's Office ("MCPO") and Celita Scott ("Scott") (collectively, "Defendants") (Filing No. 56), and a Motion for Sanctions for Spoliation of Evidence, which is imbedded within Plaintiff Susan Kinder's ("Kinder") Response brief (Filing No. 72 at 15). Kinder initiated this action on May 22, 2024 and filed an Amended Complaint on September 5, 2024, alleging unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Filing No. 24). On June 2, 2025 the Court granted Defendants' unopposed Partial Motion to Dismiss.[1] (Filing No. 58). Defendants now seek judgment as a matter of law on the remaining Title VII claims of retaliation against the MCPO based on the denial of the major felony secretary position and the issuance of a verbal warning with a threat of a formal written warning. For the reasons discussed in this Order, the Defendants' Motion for Summary Judgment is **granted** and Kinder's Motion for Sanctions for Spoliation of Evidence is **denied**.

---

[1] The Court dismissed Kinder's Section 1981 claims against the MCPO and Scott, Title VII claims against Scott and Title VII claim against MCPO concerning the diminishment of her job duties and failure to be assigned victim advocacy work. (Filing No. 58 at 11).

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Kinder as the non-moving party. *See Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This background section is not inclusive of all facts alleged, rather it references only those facts relevant to the remaining claims.

Kinder, a white female, joined the MCPO in 2014. In October 2021, Kinder, filed an EEOC Charge against the MCPO alleging discrimination based on her race in violation of Title VII of the Civil Rights Act of 1964. A year later, in October 2022, Kinder filed a lawsuit alleging that MCPO discriminated against her due to her race by refusing to allow her to perform victim advocacy work in violation of Title VII and the equal protection clause of the Fourteenth Amendment. (Filing No. 24 at 4). Another judge in this district granted MCPO's motion for summary judgment and entered final judgment against Kinder. *See Kinder v. Marion County Prosecutor's Office*, 1:22-cv-01952-MPB-MJD. 2024 WL 2836481, at *7 (S.D. Ind. April 2, 2024) ("*Kinder I*").[2] During *Kinder I*, Kinder remained employed at MCPO at its downtown office as a receptionist and victims' advocate.

Scott is a deputy prosecutor at MCPO and she serves as the office's chief counsel. At all times relevant to this action, Kinder's advocacy duties were supervised by advocacy administrator Linda Cochran ("Cochran") (Filing No. 56-1 at 2). Concerning her receptionist duties, Kinder reported to Venita Farrow ("Farrow"), and Farrow reports to Domini Eldridge ("Eldridge"), who reports to Scott. *Id*. William Timothy Kelsey ("Kelsey") is the human resources manager at MCPO (Filing No. 56-7).

---

[2] Summary Judgment was affirmed on appeal by the Seventh Circuit Court of Appeals. *See Kinder v. Marion County Prosecutor's Office*, No. 24-1952, 2025 WL 914342, at *6 (7th Cir. 2025).

As a receptionist, Kinder answers telephones, greets people arriving for appointments, depositions, and meetings, and opens court mail, crime labs, and EFS court mail. Kinder was required to find someone to cover the reception desk when she needed to leave the desk to go to the bathroom or any other time she needed to be away from the desk. (Filing No. 72-19). She was required to find coverage if she called out sick or took a vacation. *Id*. If Kinder called off sick for a day, she was required to notify the secretaries via email and ask for someone to cover for her. *Id*. at 20. If Kinder was going to be off work for three days or more, her supervisor was responsible for finding coverage. *Id*. at 15.

On March 30, 2023, Scott sent an email to office staff informing them that a major felony secretary position was open (Filing No. 56-19 at 1), and anyone interested could send their resumes to Eldridge, Farrow, and Kelsey. Ultimately, there were two openings for the major felony special victim's unit secretary position. (Filing No. 56-7 at 1 ¶3). A hiring committee of Max Pena Pardo ("Pena Pardo"), Farrow, Eldridge, and Kelsey (collectively, the "Panel") conducted interviews for the two available positions for which Kinder applied. *Id*. The positions Kinder applied for were considered lateral transfers and would not have resulted in any pay increase had she gotten either job (Filing No. 56-1 at 3 ¶11). Upon conclusion of the interviews the Panel chose two candidates to fill the positions and unanimously agreed that both interviewed better and were a better fit than Kinder. *Id*. at 2 ¶5.

Each of the interviewers had significant concerns about Kinder's interview. Kelsey noted that Kinder seemed to stumble through the questions and that there were better candidates for the position (Filing No. 56-8 at 8). Farrow noted that Kinder was closed off, did not seem happy to be interviewing, answered all the questions with "yes" or "no", and did not offer any insight on why she was interested in the secretary position (Filing No. 56-10 at 1). Eldridge noted that when asked,

3

"how do you [] stay organized at work[?]", Kinder replied "I'm not doing the job so, I don't know how to answer that." (Filing No. 56-6 at 1). Pena Pardo noted that Kinder "did not interview very well and did not seem prepared." (Filing No. 56-4 at 1). Kelsey also noted that Kinder did not ask any questions of the Panel after the interview (Filing No. 56-8 at 8).

In May and June 2023, a series of incidents led to Kelsey issuing Kinder a verbal warning (Filing No. 56-7 at 2 ¶ 6). First, on May 2, 2023, an employee reported that they witnessed Kinder being rude to a food service employee. *Id*. at ¶7. Specifically, the employee alleged that this occurred as Kinder was leaving to go to lunch, and the food service person was asking for a name Kinder said she did not know (Filing No. 72-9 at 9:10–10:11). Kinder did not recall this encounter, and denies that she turned away a food delivery person because she did not know a name that was on the order. *Id.*; (Filing No. 72-20 at 88:15–19).

Second, on May 31, 2023, an intern reportedly forgot their keys to access their work area on the third floor, which was the same floor where Kinder worked. When the intern asked Kinder if she could let her in, Kinder refused and told the intern to go to the sixth floor. Operations Manager Alexis Clesi ("Clesi") found the intern in the sixth-floor lobby crying and escorted the intern back to the third floor to let her in. Clesi reported that she verified for Kinder who the intern was and asked Kinder to let the intern into the third floor for the rest of the day, but Kinder refused to do so. *Id*. at ¶8. Kinder did not grant the intern access because Eldridge had communicated to Kinder that she received a phone call from Scott telling her not to let anyone in without their key or fob. (Filing No. 72-9 at 2).

Third, on June 2, 2023, Kinder sent an email to her supervisor stating that she would not be at work that day and letting her know who would cover the front desk. Kinder failed to provide any explanation for the absence which violated the office's attendance policy as outlined in the

employee policies and procedures manual. *Id*. at 2–3 ¶9. Fourth, on June 12, 2023, Kinder sent an email indicating that she would not be at work, but this time she failed to obtain coverage, which also violated the office's attendance policy. *Id* at 3 ¶11.

On June 9, 2023, Eldridge and Kelsey met with Kinder regarding the complaints involving the intern and food worker. During this meeting, Kinder explained that she believed she was following Eldridge's orders by not letting someone in who did not have a key or badge. They informed Kinder that she would be given a procedure to follow in the future to verify an employee's identity. Kinder also denied being rude to the food service employee. *Id*. at 3 ¶10.

On June 15, 2023, Kelsey and Eldridge met with Kinder to discuss the complaints and her issues with attendance and coverage policies. *Id*. at 3 ¶12. Kinder provided an explanation concerning each incident. Kelsey made the decision to provide Kinder with a verbal warning to ensure that Kinder was aware of the office's expectations moving forward. *Id*. at 4 ¶14. He communicated to Kinder that a record of the verbal would be neither placed in Kinder's personnel file nor in her permanent record (Filing No. 72-13 at 2). However, the verbal warning included that any further violations of the MCPO policies and procedures may result in further corrective action, up to and including termination of employment. *Id*.

On July 19, 2023, Kinder filed a Charge of Discrimination alleging retaliation with the EEOC Indianapolis District Office (Filing No. 72-5). On August 8, 2023, Kelsey—aware of the pending EEOC Charge—sent an email to Eldridge, Farrow, and Pena Pardo requesting all the notes they had on the interviews for the Major Felony Sex Crimes Secretary position (Filing No. 72-6). Pena Pardo, Eldridge and Farrow provided an email summary of their notes to Kelsey but did not provide their actual notes. (Filing No. 56-21 at 79; Filing No. 56-3 at 1; Filing No. 56-23 at 58).

Kinder filed her Complaint in this action on May 22, 2024.

5

## II.     LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion

for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

Kinder asserts that the MCPO and Scott denied her a major felony secretary position, and issued a verbal warning against her in retaliation for engaging in protected activity of filing the lawsuit in *Kinder I*. The Defendants filed their Motion for Summary Judgment on May 27, 2025 asserting that Kinder's retaliation claims fail on the merits as she cannot show that she suffered an adverse action or that there was a causal connection between any alleged adverse action and any protected activity. Kinder filed her response on August 22, 2025, in which she imbedded a Motion for Sanctions for Spoliation of Evidence. The Court will first address the merits of the summary judgment motion then turn to the request for sanctions.

### A.   Motion for Summary Judgment

Kinder engaged in statutorily protected activity when she filed her EEOC charge of discrimination in October 2021 and her complaint in federal court in October 2022. She alleges the Defendants retaliated against her for engaging in this protected activity by (1) not hiring her for a major felony secretary position and (2) issuing her a verbal warning with the threat of further action (Filing No. 24). To survive summary judgment on her retaliation claims, Kinder must offer evidence of "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008)). The Defendants do not dispute that Kinder engaged in protected activities, but argue that her claims nonetheless fail on the second and third elements. (Filing No. 57 at 16). The Court will address each element in turn.

1. **Materially Adverse Action**

"[M]aterially adverse actions may include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465–66 (7th Cir. 2002) (quoting *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir. 1999)). The denial of a transfer with "parallel pay, benefits, and responsibilities" does not constitute an adverse employment action. *Saggu v. Dejoy*, No. 19 C 2303, 2021 WL 1165106, at *12 (N.D. Ill. March 26, 2021) (quoting *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 275 (7th Cir. 2004)). Moreover, if a plaintiff fails to prove they were qualified for a promotion, their subsequent denial of that promotion does not constitute an adverse employment action. *Dandy*, 388 F.3d at 275 (citing *Patt v. Family Health Systems, Inc.*, 280 F.3d 749, 745–55 (7th Cir. 2002)).

Defendants argue that Kinder did not suffer a materially adverse employment action because the major felony secretary position was not a promotion, rather, it was a lateral transfer in which she would not have received any additional pay. (Filing No. 57 at 16). Defendants argue that Kinder's preference to perform secretary duties instead of receptionist duties is insufficient to establish that the denial of the position constituted a materially adverse action. *Id*. at 17. The Defendants further argue that the verbal warning was not a materially adverse action because the warning neither went into Kinder's personnel file nor her permanent record.

Kinder argues that "[u]nder the hierarchy of MCPO, there are paralegals, then secretaries, then receptionists. The receptionist position is considered to be a level below a secretary. By denying Kinder the position, she contends she was denied the opportunity to move into a higher-level position within MCPO." (Filing No. 72 at 6). Kinder does not proffer any argument as to why

8

the verbal warning was a materially adverse action beyond stating that "MCPO's verbal warning to Kinder was based on unsubstantiated, inaccurate information and events that did not occur." *Id*. at 15.

Kinder is correct that within the MCPO hierarchy, a secretary position is technically a higher-level position than a receptionist, however, as Defendants point out, she was not simply employed as a receptionist but had a hybrid receptionist and backup advocate role. (Filing No. 56-1 ¶ 6.) Defendants argue persuasively that for Kinder, the new position would have been lateral, because Kinder would not have received any additional pay if she had been selected for either of the major felony secretary positions (Filing No. 56-1 at 3 ¶11). A lateral change in employment alone is not material. For an adverse employment action to be material, the change in terms and conditions of employment "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) (cleaned up). For example, a "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993). None of these circumstances apply here. Denial of a purely lateral transfer is not an adverse employment action under Title VII. *See Saggu v. Dejoy,* 2021 WL 1165106, at *12 (N.D. Ill. Mar. 26, 2021). Accordingly, Kinder has not shown that she suffered a materially adverse action when she was denied the major felony secretary position, and she has failed to put forth sufficient evidence to create a triable issue of fact as to the adverse employment action element.

Kinder argues that MCPO's verbal warning was based on unsubstantiated, inaccurate information and events that did not occur. She contends that she followed the directive Scott gave

to Eldridge that Eldridge in turn gave to Kinder concerning the intern, and the alleged incident with the food delivery person occurred while the office was closed and Kinder wasn't even present. (Filing No. 72 at 15). But Kinder did not suffer an adverse employment action when given the verbal warning with the threat of future disciplinary action. The verbal warning neither went into her personnel file nor went on her permanent record. Indeed, the record is devoid of any evidence that the verbal warning resulted in any adverse action let alone a material one.

And even if, as Kinder claims, the verbal warning was "based on unsubstantiated, inaccurate information and events that did not occur," "[u]nfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001); *see also Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118–19 (7th Cir. 2001) (holding that verbal warnings without being accompanied by any tangible job consequence do not amount to adverse employment actions); *Vance v. Ball State Univ.*, 646 F.3d 461, 475 (7th Cir. 2011) ("No reasonable jury could find that the delivery of a verbal warning, based on a complaint from a coworker, constitutes an adverse employment action[.]").

In addition, the threat of future action does not amount to a materially adverse employment action. *See Poullard v. McDonald*, 829 F.3d 844, 856–57 (7th Cir. 2016) (holding that an employer's unfulfilled threats of unspecified disciplinary action did not constitute adverse actions); *see also Lewis v. Wilkie*, 909 F.3d 858, 870 (7th Cir. 2018) (collecting cases). Accordingly, because Kinder did not suffer a materially adverse employment action, from either the denial of the secretary role or the issuance of a verbal warning with the threat of further action, her claims fail on the second element of her retaliation claim.

## 2. Causal Connection

Even if Kinder could establish a materially adverse action, there is clearly no causal link between her filing of the EEOC charge and lawsuit and the denial of the major felony secretary position or the verbal warning she received.

"Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013). A plaintiff can survive summary judgment by pointing to either direct or circumstantial evidence to demonstrate causation. *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). Circumstantial evidence can include, for example, "suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently." *Id*. (quoting *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016). "This list is not exclusive; the plaintiff can point to any 'other evidence from which an inference of discriminatory intent might be drawn.'" *Id*. (quoting *Gracia*, 842 F.3d at 1019).

In her response brief, Kinder acknowledges that to show causation, she must point to circumstantial evidence, such as "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason." (Filing No. 72 at 6). However, she fails to point to any such evidence to show causal connection between her filing of the EEOC charge and lawsuit and her denial of the major felony secretary position or the verbal warning. She simply concludes, without support, that both occurrences were the result of her filing an EEOC charge and lawsuit. This is unsurprising as the record is entirely devoid of any evidence—circumstantial or direct—that would lead to the conclusion that either occurrence was the result of Kinder's EEOC charge or prior lawsuit.

11

Instead, the evidence overwhelmingly shows that Kinder was denied the major felony secretary position because she interviewed poorly. Kinder admits that she was late for the interview due to an issue logging into Webex and she had to seek assistance from IT. (Filing No. 72-23 at 24–25). Thereafter, all four members of the Panel expressed significant concerns about Kinder's ability to succeed in the secretary role. Kelsey noted that Kinder seemed to stumble through the questions and that there were better candidates for the position (Filing No. 56-8 at 8). Farrow noted that Kinder was closed off, answered all the questions with "yes" or "no", and did not offer any insight on why she was interested in the secretary position (Filing No. 56-10 at 1). Eldridge noted that when asked, "how do you [] stay organized at work[?]", Kinder replied "I'm not doing the job so, I don't know how to answer that." (Filing No. 56-6 at 1). In his notes, Eldridge wrote that Farrow did not believe Kinder was going to be a good fit (Filing No. 72-22 at 20). Pena Pardo noted that Kinder "did not interview very well and did not seem prepared." (Filing No. 56-4 at 1). And even if the Panel did not express such concerns, federal courts "do not sit as a kind of 'super-personnel department' weighing the prudence of employment decisions made by firms charged with employment discrimination." *Giannapoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997).

Likewise, Kinder fails to show causation concerning the verbal warnings. She argues that MCPO's verbal warnings were based on unsubstantiated, inaccurate information and events that did not occur. Even though she denies any wrongdoing, the designated evidence shows that Kinder received the verbal warning based on issues reported by other employees, failing to explain why she called off work on multiple occasions in violation of MCPO policies, and failing to find coverage on one of the days she called off in violation MCPO policies. These are legitimate issues which an employer may bring to an employee's attention.

12

Kinder's retaliation claims fail on both the second and third elements. She has not shown a causal connection between her filing of the EEOC charge and lawsuit and her denial of the major felony secretary position or the verbal warning. Accordingly, Defendants' Motion for Summary Judgment is **granted**.

**B.**     <u>**Motion for Sanctions**</u>

Embedded in the conclusion section of Kinder's response brief is a Motion for Sanctions for Spoliation of Evidence (Filing No. 72 at 15). As an initial matter, Plaintiff's counsel is reminded of their obligation to comply with the Court's Local Rules. Local Rule 7-1(a) states that "[a] motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court." S.D. Ind. L.R. 7-1(a). Further, Local Rule 37-1(b) states that "[a]ny motion raising a discovery dispute must contain a statement setting forth the efforts taken to resolve the dispute[.]" S.D. Ind. L.R. 37-1(b). The request for sanctions fails on both accounts.[3] Nonetheless, the Court will rule on the merits of the Motion as if it were properly filed.

"To obtain an adverse inference related to spoliation, a plaintiff must demonstrate that a defendant intentionally destroyed documents in bad faith." *Downing v. Abbott Lab'ys*, 48 F.4th 793, 812 (7th Cir. 2022) (citing cases). "The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed for the purpose of hiding adverse information." *Id*. (quoting *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010)).

Kinder points out that Eldridge's interview notes were not produced in discovery and were destroyed in December 2024 when she left MCPO, and Farrow's is uncertain as to when her actual notes were destroyed. Kinder argues that the destruction of these panel members interview notes

---

[3] Kinder's Motion may also be untimely as she learned of the alleged spoliation at least four months before raising the issue. However, the Court need not rest its decision on procedural failures.

13

after her EEOC charge and litigation had been filed, was done in bad faith and has prejudiced her (Filing No. 72 at 9). The Court is not persuaded.

Kinder has designated no evidence to show bad faith or prejudice. On August 8, 2023 Kelsey reached out to the other members of the Panel after Kinder's interview and requested they send him their interview notes (Filing No. 56-4 at 2). Each of the other three Panel members' notes were sent to Kelsey via email and preserved for this litigation (*see* Filing No. 56-4, Filing No. 56-6, Filing No. 56-10). Eldridge testified that she recopied whatever she wrote in her notes, and emailed an exact copy of her interview notes without any changes (Filing No. 56-21 at 79:18–80:9). Pena Pardo testified that he sent an accurate account of his notes (Filing No. 56-3 at 1 ¶4). Farrow also confirmed the validity of the interview notes she sent (Filing No. 56-23 at 58:4–61:8, Filing No. 56-5 at 2 ¶6).

Kinder has not shown that any notes were destroyed in bad faith or that she has suffered any prejudice. Her contention that the notes in the emails may have been modified is mere speculation, unsupported by the record, which is not enough to warrant sanctions. *See In Re Text Messaging Antitrust Litig.*, 46 F. Supp. 3d 788, 797 (N.D. Ill. 2024) (denying spoliation sanctions where spoliation claim was based on speculation); *see also Stoller v. CMH Mfg. West Inc.*, No. 18 C 0047, 2020 WL 616464, at *3 (N.D. Ill. Feb. 10, 2020) (citing *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) ("In other words, because [plaintiff] has provided only speculation that [defendants] intentionally destroyed the [evidence], the Court denies his motion for sanctions and default."). Accordingly, Kinder's Motion for Sanctions for Spoliation of evidence is **denied**.

## IV.　CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Filing No. 56) is **GRANTED,** and Kinder's Title VII retaliation claims for the denial of the major felony secretary position and the verbal warning with threat of further action are **dismissed with prejudice**. Kinder's Motion for Sanctions (Filing No. 72) is **DENIED**.

Final judgment shall issue separately.

**SO ORDERED**.

Date:　3/2/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

Thomas B. Roberts
Roberts Law
thomas@trobertslaw.com

15